# The United States Court of Federal Claims

Case No. 08-645C
(Filed: September 14, 2009)
TO BE PUBLISHED

| | |
|---|---|
| ************************************************* <br> CATHERINE JONES, et al.,         * <br>          *Plaintiffs,*             * <br>                                  * <br>     v.                                   * <br>                                  * <br> THE UNITED STATES OF AMERICA, * <br>          *Defendant.*          * <br> ************************************************* | Aviation and Transportation Security Act, 49 U.S.C. § 44935; Fair Labor Standards Act, 29 U.S.C. § 207; security screeners; overtime compensation; statutory construction of "notwithstanding" |

*Richard Bernard Celler*, Morgan & Morgan, attorney of record for Plaintiffs.

*Joseph Alan Pixley*, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, attorney of record for Defendant. With him on briefs, *Janessa L. Grady Fleming*, U.S. Department of Homeland Security, TSA Office of the Chief Counsel.

*Sharon J. Kim and Amelia C. Moorstein*, law clerks.

*Gregory Sobczak*, intern.

## OPINION/ORDER

**BASKIR, Judge**

      Plaintiffs, security screeners for the Transportation Security Administration (TSA), seek overtime pay in accordance with the overtime compensation scheme set forth in the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* (2000). Because we find that the plain language in Section 111(d) of the Aviation and Transportation Security Act (ATSA) unambiguously vests TSA with complete discretion in setting compensation levels for security screeners "notwithstanding any other provision of law," 49 U.S.C. § 44935 (*note*), **we GRANT Government's Motion to Dismiss** pursuant to Rules of the Court of Federal Claims (RCFC) 12(b)(6) for failure to state a claim upon which relief can be granted.

I.  **BACKGROUND**

   A.   *Nature of the Case*

The facts in this case are taken from Plaintiffs' Complaint and Defendant's Motion to Dismiss and are undisputed. Catherine Jones and at least 19 other named plaintiffs (collectively "Plaintiffs") work for TSA, a component of the U.S. Department of Homeland Security created in response to the attacks on September 11, 2001. Plaintiffs are security screeners, which entails the screening of passengers and baggage at airport security gates prior to passengers boarding their flights.

Plaintiffs are hourly wage earners. For simplicity, we refer to Plaintiffs' hourly base rate as their straight time rate. To provide Plaintiffs with incentives to work less desirable shifts, TSA compensates Plaintiffs at a premium rate to work nights, Sundays, and holidays at 110%, 125%, and 200%, respectively, of their straight time rate. This is consistent with the premium rates dictated by the Fair Labor Standards Act (FLSA). *See* 29 U.S.C. §§ 207 *et seq.* (generally establishing minimum wage and overtime pay standards for private and public sector employees).

Given the nature of their positions in safeguarding national security, Plaintiffs routinely take on overtime shifts in excess of the standard 40-hour work week. In accordance with TSA's overtime compensation scheme, TSA pays Plaintiffs one-and-a-half times (150%) their straight time rate for each overtime hour worked, regardless of whether Plaintiffs had worked regular hours or premium shifts. This is allegedly inconsistent with the overtime calculation set forth in the FLSA, which requires that premium rates be creditable toward overtime compensation. *See* 29 U.S.C. § 207(h).

In light of this apparent discrepancy, Plaintiffs filed a Complaint in this Court on September 12, 2008. Plaintiffs seek overtime pay in accordance with the FLSA's calculation of 150% of the applicable rate worked, including all premium rates. On April 15, 2009, Defendant moved to dismiss the Complaint pursuant to RCFC 12(b)(6), urging that the Court consider the preemptive language of the ATSA with regard to TSA's discretion in screener employment decisions. *See* 49 U.S.C. § 44935. Pertinent to this litigation is Section 111(d), which states:

> Notwithstanding any other provision of law, the Under Secretary of Transportation for Security may employ, appoint, discipline, terminate, and fix the compensation, terms and conditions of employment of Federal service . . . [as] necessary to carry out the screening functions of the Under Secretary under Section 44901 of Title 49, United States Code. The Under Secretary shall establish levels of compensation and other benefits for individuals so employed.

49 U.S.C. § 44935 (*note*).

Defendant argues that Section 111(d) of the ATSA supercedes all other laws and precludes Plaintiffs from bringing a claim for alleged violations of the FLSA. This case is now before the Court on Defendant's Motion to Dismiss pursuant to RCFC 12(b)(6).

B.  *Prior Proceedings*

Immediately after filing the Complaint, Ms. Jones filed numerous motions for leave to file additional consent forms on behalf of individuals wanting to participate in this litigation. To date, at least 19 similarly situated individuals have joined as additional plaintiffs by exercising their opt-in right under the FLSA. Two months into the litigation, on December 23, 2008, Plaintiffs filed a Motion for Conditional Certification of the Collective Action on information and belief that tens of thousands of current and former personnel would join the action.

Defendant then filed a notice of intent to file a Motion to Dismiss, and the Court determined to resolve the dispositive motion before the Motion for Certification. Unlike Federal Rules of Civil Procedure Rule 23 class actions, the commencement of an FLSA collective action does not toll the statute of limitations for putative class members. *See* 29 U.S.C. § 256(b). Consequently, an untold number of potential class members would exceed the statutory period while the Motion to Dismiss was pending. Therefore, Plaintiffs moved the Court to equitably toll the statute of limitations from December 23, 2008, until our ruling on their Motion for Certification.

On April 28, 2009, we denied Plaintiffs' Motion for Equitable Tolling. We acknowledged that the issue of whether equitable tolling is generally permitted under the FLSA has not been resolved by either the Supreme Court or the U.S. Court of Appeals for the Federal Circuit. We then held that a motion to dismiss or a certification motion presented insufficient grounds to warrant modification of the statutory limitations period. Moreover, our staying of class certification would not prevent putative plaintiffs from asserting a potentially colorable claim for relief, nor would it affect their ability to commence their own litigation. **Because we now dismiss this matter pursuant to RCFC 12(b)(6), we render moot Plaintiffs' Motion to Conditionally Certify the Collective Action.**

## II.    DISCUSSION

A.  *Applicable Legal Standards*

i.  <u>RCFC 12(b)(6)</u>

As in any RCFC 12(b)(6) ruling, the Court "must assume all well-pled factual allegations are true and indulge in all reasonable inferences in favor of the non-movant." *United Pacific Ins. Co. v. United States*, 464 F.3d 1325, 1327-28 (Fed. Cir.

2006). To avoid dismissal, the non-moving party must plead factual allegations that support a facially "plausible" claim to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559-60 (2007). The question this Court must ask is not "whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims." *Id.* at 583 (citations omitted).

### ii. Chevron Inquiry

On review of an agency's interpretation of a statute it administers, the Court must ask two questions. *Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842 (1984). "First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter, for the court as well as the agency must give effect to the unambiguously expressed intent of Congress." *Id.* at 842-43. However, "if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.* at 843. If the court determines that Congress did unambiguously speak on the question at issue, the court should only disturb the agency construction if "it appears from the statute or its legislative history that the accommodation is not one that Congress would have sanctioned." *Id.* at 844 (citation omitted). In this case, we conclude that the text of Section 111(d) is unambiguous on its face, and so we do not consider the second question.

## B. *The "Notwithstanding" Clause*

The "precise question at issue" is whether Section 111(d) of the ATSA exempts TSA from compliance with the FLSA when establishing overtime compensation for security screeners. Because we find that the plain language of Section 111(d) is unambiguous, we conclude that TSA need not comply with the FLSA.

### i. Plain Meaning of "Notwithstanding"

Section 111(d) is not ambiguous because Congress' intent to override conflicting provisions of law is made clear through the plain meaning of "notwithstanding." Although Plaintiffs belatedly claim that Section 111(d) is ambiguous, they fail to articulate any plausible reason to support a conclusion that the statute is ambiguous on its face. *See* Pl. Supp. Br. 3. The Supreme Court has instructed courts to give statutory language its "ordinary, contemporary, and common meaning" unless Congress clearly expresses otherwise. *Williams v. Taylor*, 529 U.S. 420, 432 (2000) (quoting *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380). Furthermore, the Supreme Court has held that if language in a statute has been well-settled at common law, Congress intended to adopt the cluster of ideas attached to that language. *Beck v. Prupis*, 529 U.S. 494 (2000).

4

The "ordinary, contemporary, and common meaning" of "notwithstanding" is "without prevention or obstruction from or by." *Webster's Third New International Dictionary* 1545 (3rd ed. 1993). The meaning of "notwithstanding" has been well-settled at common law, as demonstrated by its inclusion in Black's Law Dictionary, where "notwithstanding" is defined as "despite." *Black's Law Dictionary* 1094 (8th ed. 2004). When these definitions are inserted into Section 111(d), the statute reads "Without obstruction by any other provision of law..." or "Despite any other provision of law...". Because the statute does not clearly express that Congress intended to attribute anything other than its plain meaning to "notwithstanding," Section 111(d) must be interpreted as precluding application of any other conflicting provisions of law.

The Supreme Court has spoken on the issue, stating that "the 'notwithstanding' clause clearly signals the drafter's intention that the provisions of the 'notwithstanding' section override conflicting provisions of any other section." *Cisneros v. Alpine Ridge Group*, 508 U.S. 10, 18 (1993) (citing *Shomberg v. United States,* 348 U.S. 540, 547-548 (1955)). The Court noted that the Courts of Appeals generally interpret "notwithstanding" language as superceding all other conflicting laws and have declared that "[a] clearer statement is difficult to imagine." *Id.* at 18 (quoting *Liberty Maritime Corp. v. United States,* 928 F. 2d. 413, 416 (D.C. Cir. 1991)).

      ii.      <u>Case Law Applying Section 111(d)</u>

Case law interpreting Section 111(d) applies the plain meaning of "notwithstanding" to conclude this statute overrides other provisions of law that conflict with the power of the Under Secretary to "employ, appoint, discipline, terminate, and fix the compensation, terms and conditions of employment of Federal service." Plaintiffs argue these cases should be construed to hold that Section 111(d) overrides federal personnel laws applying to federal civil service employees but does not override general federal employment laws applicable to both federal and non-federal employees. This argument is unsubstantiated. With one exception, which we discuss later, the cases holding that the provision is unambiguous and thus overrides federal personnel laws (i.e. Title 5 U.S.C.) do not suggest that general federal employment statutes would be treated any differently.

To the contrary, the U.S. Court of Appeals for the Federal Circuit has found that Section 111(d) preempts general federal employment statutes. *See Conyers v. Merit Sys. Prot. Bd.*, 388 F. 3d 1380 (Fed. Cir. 2004). In *Conyers*, the Court held that the Merit Systems Protection Board properly dismissed challenges to Plaintiff's rejected TSA screener application under various Title 5 provisions. It also rejected the appellant's claim under the Uniformed Service Employment and Reemployment Rights Act of 1994 ("USERRA"), 38 U.S.C. § 4324 (2000), citing lack of jurisdiction based on the preemptive language in Section 111(d). *See id.* at 1382. The Court made no distinction in rejecting the challenges based on Title 5 provisions and the challenge based on USERRA. USERRA is a general federal employment law applicable to

5

private employment while Title 5 pertains only to federal civil service employees. The Court stated that "the language 'notwithstanding any other provision of law' signals that this screener-specific provision is to override more general conflicting statutory provisions to the extent they would apply to screeners." *Id.* at 1382 (citing *Cisneros*, 508 U.S. at 18 (1993). We are, of course, bound by the Federal Circuit's conclusion that the "notwithstanding" clause operates to exclude "any other provision of law."

Decisions by other courts support the Federal Circuit's conclusion. *See Castro v. Sec'y of Homeland Security*, 472 F. 3d 1334, 1337 (11th Cir. 2006) (holding that Section 111(d) exempts TSA from complying with hiring standards set forth in the Rehabilitation Act, 29 U.S.C. § 701 et seq., a statute generally prohibiting discrimination on the basis of disability in programs conducted by Federal agencies, in programs receiving Federal financial assistance, in Federal employment, and in the employment practices of Federal contractors); *see also Tucker v. Ridge*, 322 F. Supp. 2d 738, 742 (E.D.Tx. 2004) (dismissing Plaintiff's claim of discrimination under the Rehabilitation Act because it was superceded by Section 111(d)); *see also Springs v. Stone*, 362 F. Supp. 2d 686 (E.D. Va. 2005) (dismissing TSA screener's wrongful termination claim pursuant to Section 111(d)).

Courts have clearly stated that the effect of the "notwithstanding" language in Section 111(d) is to supercede all other laws conflicting with the powers granted to the Under Secretary. *See Castro*, 472 F. 3d at 1337 ("We read the phrase 'nowithstanding any other provision of law' as Congress's indication that the statute containing that language is 'intended to take precedence over any preexisting or subsequently enacted... legislation [on the same subject]'" (quoting *United States v. McLymont*, 45 F. 3d 400,401 (11th Cir. 1995))); *see also Springs*, 362 F. Supp 2d at 698 ("The breadth of [Section 111(d)] cannot be overstated...those provisions of law that would otherwise constrain the Under Secretary's discretion, do not apply to employment action affecting airport security screeners*"); see also American Fed'n of Gov't Employees Local 1 v. Stone*, 502 F. 3d 1027, 1030 (9th Cir. 2007) (describing Section 111(d) as "a catchall provision giving the TSA Administrator significant discretion over the employment of security screeners"). None of these courts indicate that Section 111(d)'s "notwithstanding" clause would produce different results depending on whether the provision at issue were a general federal employment law or a federal personnel law.

One case, *American Fed'n of Gov't Employees TSA Local 1, et al. v. Hawley,* supports Plaintiffs' argument. 481 F. Supp. 2d 72 (D.D.C. 2006) (finding that Section 111(d) does not override the Age Discrimination in Employment Act (ADEA), 29 U.S.C.A. § 621 et seq.). *Hawley* is not binding on this Court and is not persuasive. The Court states that the plain language of Section 111(d) gives the Under Secretary "broad discretion," yet later in the opinion narrowly construes the very same language. *See id*. at 75. The Court does not explain why Section 111(d) does not preempt the ADEA but merely concludes that Plaintiffs are protected "because the ADEA is not part of federal personnel laws." *Id*. at 91.

6

C. *Legislative History of Section 111(d)*

The rules of statutory construction provide that recourse to legislative history is unnecessary if the legislative intent is clear from the text. *See Sullivan v. Stroop*, 496 U.S. 478, 482 (1990). Consequently, Plaintiffs' efforts to build ambiguity into the unambiguous "notwithstanding" clause by examining that history is inappropriate. Even so, the legislative history of Section 111(d)- not surprisingly- reinforces our view of the intent of the statute.

     i.     ATSA

Plaintiffs assert the legislative history of the ATSA shows that Congress did not intend to override general federal employment statutes that apply to both federal and private sector employees, such as the FLSA. They argue the legislative history indicates the clause "notwithstanding any other provision of law" only overrides federal personnel laws.

After the terrorist attacks on September 11, 2001, numerous versions of the ATSA were drafted and proposed before it was enacted on November 19, 2001. The original Senate bill, S. 1447, was introduced on September 21, 2001, and granted the Secretary of Transportation the authority to "employ, appoint, and fix the compensation of such a number of individuals in accordance with the provisions of part III of title 5, United States Code." S. 1447, 107th Cong. § 10(f) (Sept. 21, 2001).

An amendment was adopted by the Senate on October 11, 2001 (S. Amdt. 1881) that introduced the language "notwithstanding any other provision of law" and dropped any reference to Title 5. Plaintiffs argue that this change indicates an intent to prevent Title 5, and only Title 5, from applying to TSA employees. While this amendment certainly at least had this effect, Plaintiffs ignore the significance of the addition of the "notwithstanding" language and the ensuing debate. Lawmakers on both the House and Senate side recognized that the legislation's broad "notwithstanding" clause would have exempted screeners from basic legal protections, including the FLSA, in addition to exempting it from Title 5 protections. *See* 147 CONG. REC. H7674 (Nov. 1, 2001) (statement of Rep. Weldon).

Representative Weldon commented that "the way this amendment was drafted it exempts these new Federal employees from the Veterans Preference Act, the civil rights laws, the Rehabilitation Act, the Age Discrimination Act...Federal Labor Standards Act, and the whistleblower protections." *Id.* Representative Johnson recognized that the proposed legislation was "...not going to even give these employees the

protection of fair labor standards. Why should they not have the protection of minimum wage and time and a half for overtime laws?" 147 CONG. REC. H7682-83 (Nov. 1, 2001) (statement of Rep. Johnson); *see also* 147 CONG. REC. S11982 (Nov. 16, 2001) (statement of Sen. Johnson) (claiming the "notwithstanding" language failed to include the most basic rights of Federal workers).

Yet despite these objections, the "notwithstanding" clause emerged from conference. *See Hawley*, 481 F. Supp. 2d at 78. On November 19, 2001, Congress enacted Section 111(d) in its final form, including the final sentence which was added in Conference: "The Under Secretary *shall establish levels of compensation and other benefits* for individuals so employed." *See* 49 U.S.C. § 44935 (*note*) (emphasis added). This final language, along with the debate accompanying the insertion of the "notwithstanding" language, demonstrate that Congress intended the Under Secretary to have wide discretion in employment decisions regarding security screeners and particularly with respect to setting compensation levels.

      ii.      <u>Purpose Statement</u>

At oral argument before this Court on July 30, 2009, and in supplemental briefings, Plaintiffs asked that we afford the purpose statement of S. Amdt. 1881 substantial weight as an "explicit statement of legislative intent as well as a statement of the legislation's sponsor [Senator John McCain]." Pl. Supp. Br. 2; Transcript of Oral Argument (Tr.) at 10:28:13AM, July 30, 2009. The purpose statement of S. Amdt. 1881 reads, "To authorize the employment, suspension, and termination of airport passenger security screeners without regard to the provisions of title 5, United States Code, otherwise applicable to such employees." 147 CONG. REC. S 10520 (Oct. 11, 2001). According to Plaintiffs, the purpose statement in S. Amdt. 1881 reflects the Congressional intent that only Title 5 conflicting provisions were subordinated by Section 111(d).

It would be a mistake to read the absence of any reference to general federal employment provisions in the purpose statement of S. Amdt 1881 as evidence that Congress- by silence- was limiting the plain meaning of the provision. The purpose statement also makes no reference to 49 U.S.C. § 44935(i), which bars screeners from striking, even though that was also included in S. Amdt. 1881 and the final bill. Also, as discussed above, Section 111(d) went through several revisions before the final bill was enacted. The Joint Explanatory Statement of the Conference Report states that the final version of this section emerging from Conference gives the Under Secretary "the authority to employ, terminate, and fix the conditions of employment for the Federal screening workforce," H.R. Rep 107-296 at 53 (Nov. 16, 2001). This version was ultimately signed into law. The Conference explanation of the effect of Section 111(d) more accurately reflects Congress' intent than the incomplete purpose statement of the Senate amendment stage.

In the end, we find the explicit congressional intent reflected in the Conference addition of the grant of explicit authority to the Under Secretary to "establish levels of compensation" far more persuasive than Plaintiff's argument by implication.

### III.    CONCLUSION

Based on the foregoing**, we GRANT Defendant's Motion to Dismiss** pursuant to RCFC 12(b)(6) for failure to state a claim upon which relief can be granted.  The Clerk is directed to **DISMISS the Complaint.  All other motions are rendered moot.**  Each party is to bear its own costs.

**IT IS SO ORDERED.**

 s/ Lawrence M. Baskir
LAWRENCE M. BASKIR
Judge